UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KIRK KELLY,

                             Plaintiff,

            v.

INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 30,

                            Defendant.

**MEMORANDUM AND ORDER**
19-CV-3154 (LDH)

LASHANN DEARCY HALL, United States District Judge:

Plaintiff Kirk Kelly, proceeding pro se, asserts claims against Defendant International Union of Operating Engineers Local 30 ("Local 30") under the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et seq* (the "LMRDA"). Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety for failure to state a claim.

## BACKGROUND[1]

Plaintiff was hired by Local 30 as a staff organizer on August 5, 2008. (Am. Compl. ¶¶ 6, 12, 29, ECF No. 10; *id.*, Ex. A ("Kelly Suppl. Aff.") ¶ 3, ECF No. 10.) Plaintiff alleges that in his work at Local 30, he used an organizing model known as "bottom-up organizing," which empowers members to successfully lead their own co-workers in challenging an employer, including in contract negotiations. (Am. Compl. ¶ 68.) In his role as a staff organizer, Plaintiff

---

[1] Plaintiff filed two versions of the amended complaint—ECF No. 9 filed on November 12, 2019, and ECF No. 10, filed on November 13, 2019. The amended complaint filed at ECF No. 10 includes attached exhibits and references to those exhibits in the amended complaint. (*Compare, e.g.*, ¶ 19, ECF No. 9 *with* ¶ 19, ECF No. 10 (referencing exhibits).) Given that the second version was filed one day after the first, and that Plaintiff is proceeding pro se, the Court uses the more fulsome amended complaint filed at ECF No. 10 as the operative complaint. The following facts are taken from the amended complaint and attached affidavit and exhibits and are assumed true for the purposes of this memorandum and order.

was advised that his duties would require the use of his personal vehicle and other goods and services. (*Id.* ¶ 7.) Plaintiff was reimbursed for gas, tolls, and routine maintenance and minor repairs for his car. (*Id.* ¶ 31.) However, he was denied reimbursement for the purchase of a laptop and for more major repairs to his car. (*See id.* ¶¶ 30–31.)

On May 22, 2013, Plaintiff was terminated from Local 30's staff. (*Id.* ¶ 12; Kelly Suppl. Aff., ¶ 24.) Plaintiff complains that he was terminated after he informed Local 30 leadership that he could no longer absorb the expenses for which he was not reimbursed. (Am. Compl. ¶¶ 8–9.) Plaintiff complains further that his termination was the result of retaliation for his "bottom-up" organizing model. (*Id.* ¶¶ 68–69.) Lastly, Plaintiff complains that he never received a written termination notice. (*Id.* ¶ 67.)

After his termination, Plaintiff remained a member of Local 30 and continued to advocate for "bottom-up" organizing. (*See id.* ¶¶ 6, 13, 69–70.) In that regard, he presented one specific plan for organizing to Local 30 leadership, including Business Manager Bill Lynn, Research Analyst Andres Puerta, and Business Representative Bob Wilson. (Kelly Suppl. Aff. ¶¶ 12, 16.) Subsequently, Local 30 refused Plaintiff access to its dispatcher services. (Am. Compl. ¶ 70.) Specifically, Plaintiff alleges that he emailed Local 30's dispatcher on April 14, 2015, and September 3, 2015, with his resume, and indicated that he was seeking any bargaining unit work for which he might be qualified. (*Id.* ¶¶ 18–19.) Although Local 30 maintains an "Unemployed List" of members seeking employment, operated by Local 30's dispatcher's office, he received no response. (*Id.* ¶¶ 16, 18.) Plaintiff then visited Local 30's office where he met with the dispatcher's assistant. (*Id.* ¶ 19.) Plaintiff was informed that the dispatcher would be alerted to his request for a meeting to discuss potential employment opportunities. (*Id.* ¶ 19.) The dispatcher never responded to his request. (*Id.* ¶ 20.)

Plaintiff was expelled from Local 30 in April 2017 for non-payment of dues. (*Id.* ¶ 32; Kelly Suppl. Aff. ¶ 31.) Plaintiff was current on his dues through December 2016. (Kelly Suppl. Aff. ¶ 28.) According to Plaintiff, his expulsion violated the procedures in Local 30's bylaws (the "Bylaws") for non-dues related expulsions. (Am. Compl. ¶¶ 41–47.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**DISCUSSION**

Plaintiff brings a cause of action under Title I of the LMRDA. (Am. Compl. ¶ 3.) Title I provides the statute's "bill of rights," and provides that union members are entitled to: (1) equal rights; (2) the freedom of speech and assembly; (3) rights regarding dues, initiation fees, and assessments; (4) the right to bring a suit or administrative proceeding; and (5) safeguards against improper disciplinary action. 29 U.S.C. § 411(a)(1)–(5); *see also Abrams v. Carrier Corp.*, 434 F.2d 1234, 1250 (2d Cir. 1970) (Title I guarantees "to [union] members equal rights and freedom of speech in the conduct of union affairs."). Under section 102, if rights secured by Title I have been infringed, a person may bring a civil action in a district court. 42 U.S.C. § 412. Suits arising under the LMRDA are subject to a three-year statute of limitations period.[2] *Rodonich v. House Wreckers Union Local 95 of Laborers' Int'l Union*, 817 F.2d 967, 977 (2d Cir. 1987) (finding that New York states' three-year state statute of limitations for personal injury claims is most applicable to LMRDA claims). Plaintiff filed his complaint on May 24, 2019, and thus claims predicated on conduct that occurred prior to May 24, 2016, are time-barred.

---

[2] Plaintiff makes reference to a "breach of contract" claim in his amended complaint, (Am. Compl. ¶ 3), which he argues is subject to a six-year statute of limitations period, (Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") 4, ECF No. 19.) Breach of contract claims are not cognizable under the LMRDA. Nevertheless, to support his point that he has a timely breach of contract claim, Plaintiff cites to *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93 (1991). *Wooddell's* discussion of a six-year statute of limitations was in regard to a claim under a wholly different statute, the Labor Management Relations Act (the "LMRA"), not the LMRDA. *Id.* at 99; *see also O'Hare v. Gen. Marine Transp. Corp.*, 740 F.2d 160, 167 (2d Cir. 1984) ("[T]his suit much more closely resembles the traditional section 301 breach of contract action that has in the past been governed by analogous state contract law limitations, in this case New York's six year limitations period."). Section 301 of the LMRA allows members of a collective-bargaining unit to bring a breach of contract claim for violations of "interunion contracts"—*i.e.*, between a parent labor organization and a local chapter of a union. *Id.* at 101. Here, however, Plaintiff's allegation that the International Union of Operating Engineers (the parent union) "establishes the Local 30 By laws and General Rules as a contract between a member of his or her union" does not provide him with a hook to the LMRA. (Am. Compl. ¶ 2.) The gravamen of Plaintiff's amended complaint is a series of alleged violations of the LMRDA and Local 30's constitution and bylaws. "[C]onstitutions of local unions . . . are not contracts between labor organizations," and therefore provide no basis for an LMRA claim. *Messina v. Local 1199 SEIU, Nat'l Health & Human Serv. Employees Union, AFL-CIO*, 205 F. Supp. 2d 111, 126 (S.D.N.Y. 2002). And, as discussed in greater detail below, there is no federal jurisdiction over claims that a local union violated its bylaws.

In his amended complaint, Plaintiff alleges: (1) failure to reimburse for certain expenses while he was an employee; (2) employment retaliation for raising concerns about reimbursements; (3) wrongful termination; (4) free speech retaliation; (5) Local 30's failure to abide by due process in his expulsion; and (6) lack of access to union records and reports. (*See generally* Am. Compl.) As Defendant rightly contends, many of these claims fail on statute of limitations grounds. (Def.'s Mem. Law. Supp. Mot. Dismiss ("Def.'s Mem.") 5–6, ECF No. 16.)

Plaintiff was terminated from Local 30's staff on May 22, 2013, over three years before the statue limitations period began to run. (Compl. ¶ 12; Kelly Suppl. Aff., ¶¶ 24-25.) Therefore, any claims with respect to Plaintiff's employment are time-barred. Likewise, any retaliation claim premised on his termination is time-barred. Plaintiff also states a claim for free-speech retaliation premised on the dispatcher's failure to respond to Plaintiff's communications. Specifically, Plaintiff alleges that he emailed the dispatcher for work on April 14, 2015, and September 3, 2015, and met with the dispatcher's assistant "sometime after submitting this request" for assistance in securing bargaining unit work. (Am. Compl. ¶¶ 18–19.) Both dates of documented communication fall outside the statutory period and thus, this claim is also time-barred. Lastly, Plaintiff alleges that he demanded access to certain union records on June 4, 2013, and that request was denied by Local 30's leadership. (Am. Compl. ¶ 62.) Plaintiff's claims related to document requests are time-barred as the statute of limitations had run on June 4, 2016, almost 3 years before Plaintiff brought the instant action. However, even if timely, most of these time-barred claims would fail on the merits as well.

## I. Employment-Related Claims

Defendant argues that Title I of the LMRDA does not apply to Plaintiff's status as a union employee. (Def.'s Mem. 4.) Defendant is correct.

5

The Supreme Court has explained that "it is readily apparent" from the language of Title I of the LMRDA and its legislative history, that Congress sought to protect "rank-and-file union members—not union officers or employees." *Finnegan v. Leu*, 456 U.S. 431, 436–37 (1982). For this reason, Title I claims require "that the challenged action directly affect or alter the union member's rights *qua* member." *Franza v. Int'l Bhd. of Teamsters, Local 671*, 869 F.2d 41, 47 (2d Cir. 1989). In determining whether a union employee has a cognizable claim under the LMRDA, "the question is whether membership rights in the union were directly infringed by action taken with respect to a union member's employment status." *Id.* at 48. *Franza v. Int'l Bhd of Teamsters, Local 671* is analogous to the case here. There, the plaintiff, a union employee who lost his position after a new slate of union leadership was elected, brought an LMRDA action against the union. *Id.* at 42–43. The *Franza* court observed that the plaintiff's status as a member of the union was "unrelated to his employment," and therefore, "his loss of that employment is not the infringement of a right to which Title I's protections attach." *Id.* at 48. So too here. Plaintiff's loss of employment did not infringe upon his membership in the union. The same can be said for Plaintiff's LMRDA claims premised on Local 30's failure to reimburse certain expenses Plaintiff incurred as an employee and any alleged retaliation that he experienced against for raising concerns about reimbursements. Stated another way, Plaintiff does not have a cognizable LMRDA claim with respect to any of Local 30's alleged employment-related conduct as actions taken against him as an employee did not directly affect his union member rights. Accordingly, Plaintiff's claims stemming from his employment with Local 30 are dismissed.

## II. Free-Speech Retaliation Claims

Plaintiff alleges that after he "openly challenged questionable practices of the Union Leadership, the Union began a series of retaliatory actions," which started with his termination of

6

employment, and eventually included failure to assist him with job referrals and his expulsion from Local 30. (Am. Compl. ¶¶ 13, 18–20, 68–69.) "Section 101(a)(2) protects union members from direct interference with union membership rights in retaliation for their expression of opinions concerning union activities." *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 183 (2d Cir. 1998). To successfully state a claim for free-speech retaliation in violation of the LMRDA, a union member plaintiff must allege the following: "(1) [his] conduct constituted 'free speech' under the LMRDA; (2) the speech was the reason the union took action against [him]; and (3) damages." *Green v. Brigham*, 03-CV-5190 (JG), 2005 WL 280327, at *9 (E.D.N.Y. Feb. 3, 2005).

Plaintiff's first category of free-speech retaliation allegations relate to retaliatory actions taken against him as a union employee. Generally, "a union's discipline of an individual union employee does not give rise to a claim under Title I of the LMRDA." *Dilacio v. New York City Dist. Council of the United Bhd. of Carpenters & Joiners of Am.*, 593 F. Supp. 2d 571, 583 (S.D.N.Y. 2008) (citing *Finnegan*, 456 U.S. 431). This is because "[t]he rights enumerated in § 101 do not serve as job security provisions." *Franza*, 869 F.2d at 48 (collecting cases). An exception is where an employee "adequately plead[s] that his termination was part of the union's deliberate attempt to suppress dissent within the union." *Dilacio*, 593 F. Supp. 2d at 583. While such a claim is usually "pleaded by allegations of a series or pattern of acts by the union which impact the rights of a number of dissident members or groups," a union's action against a single individual can be cognizable if that individual adequately pleads that he has become "a symbol for a movement within the rank and file members," so that "discipline of that person could be considered threatening to the exercise of Title I rights by union members generally." *Id.*

(quoting *Franza*, 869 F.2d at 45).  Plaintiff has not made any such claims here, and thus his claim that his termination was the result of retaliation fails.

Plaintiff's free-speech retaliation claims regarding his membership benefits fail on similar grounds.  It is well-established that free speech within the meaning of the LMRDA is speech made "in the context of the union democratic process, *i.e.* political speech primarily addressed to other union members, rather than free speech at large."  *Leavey v. Int'l Bhd. of Teamsters-- Theatrical Teamsters Local Union No. 817*, 13-CV-0705 (NSR), 2015 WL 5802901, at *9 (S.D.N.Y. Oct. 5, 2015) (collecting cases).  Here, Plaintiff does not allege that he engaged in political speech primarily addressed to other union members.  Rather, he alleges that he had a series of in-person and written communications from July 2011 to March 28, 2016 with Local 30 leadership, including two business managers, a research analyst, and a business representative, in which he laid out his "organizing plan."  (Am. Compl. ¶ 70; Kelly Suppl. Aff. ¶¶ 12, 16.)  Plaintiff fails to allege any specific instances where his "organizing plan" or commitment to "bottom-up organizing" was ever presented to other union members in the context of the union democratic process.  It is for this reason that any free-speech retaliation claim with respect to his membership benefits fails.

### III. Denial Of Due Process In Expulsion

Plaintiff claims that he was expelled without being afforded due process.  (Compl. ¶¶ 32–53.)  Defendant argues that Plaintiff's expulsion was the result of his failure to tender dues, which exempts him from a cause of action under the LMRDA for due process.  (Def's Mem. 12.)  Defendant is correct.

> The LMRDA provides, in relevant part, that
>
> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined *except for nonpayment of dues* by such organization or by any officer thereof unless such member has been (A) served with written specific

8

> charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5) (emphasis added). Stated another way, the LMRDA does not place due process obligations on a local union where expulsion is based on nonpayment of dues.

Here, Plaintiff states that "Local 30 was in possession of my payment of dues for the period in which [Local 30] claimed I was delinquent." (Kelly Suppl. Aff. ¶ 31.) Elsewhere in his complaint, Plaintiff reiterates that he was current on his dues, but he was expelled for other reasons, such as the fact he was "no longer active" in the union. (*See, e.g.*, Compl. ¶¶ 32, 41.) However, Plaintiff specifically asserts that he was current on his dues through December 2016. (Kelly Suppl. Aff. ¶ 28.) Based on this allegation, Plaintiff's claim that he was expelled wholly for reasons other than his dues delinquency is not plausible. Plaintiff alleges that he received a letter on April 28, 2017 from Local 30's Treasurer and Membership Committee Chair informing him that he had been expelled from membership in Local 30 for non-payment of dues at the April 2017 monthly membership meeting. (*Id.* ¶ 31.) He has only alleged that he was current on dues payments through December 2016. Accordingly, he was at least three months delinquent in dues payments at the time he was expelled.[3] As an expulsion for non-payment of dues is exempt from any due process claim under the LMRDA, Plaintiff's due process claim is not cognizable.

---

[3] On a motion to dismiss, the Court is bound to take the complaint as true, and thus the Court has not considered communications regarding Plaintiff's arrears attached to Defendant's motion to dismiss. Nevertheless, the Court notes that these communications reveal that Plaintiff was actually in arrears for a longer period of time. As of November 14, 2016, Plaintiff was in arrears since April 2014, a period of over 2.5 years. (*See* Dec. 17, 2019 Decl. James Steinberg ("Steinberg Decl.") Ex. E, ECF No.15-4.) Plaintiff asserts that he sent a check for $367.50 to cover all dues payments—as well as his dues through the end of 2016. (*See* Am. Compl., Ex. B; Kelly Suppl. Aff. ¶ 28.) Dues are $35 per month, and thus his payment only covered his dues through March 2015. (*See* Steinberg Decl., Ex. G, ECF No. 15-7.) Plaintiff was actually expelled by Local 30 at the March 21, 2017 general membership meeting. (Steinberg Decl. , Ex. B, ECF No. 15-2.) He had thus been in arrears for approximately two years when he was expelled in March 2017, although his expulsion took place one month prior to April 2017, the date he alleged he was expelled. (Kelly Suppl. Aff. ¶ 31.)

Any argument that Local 30 violated its Bylaws in expelling Plaintiff fails. (Pl.'s Opp' A plaintiff "cannot state a claim that [the local union] violated the LMRDA simply by failing to comply with its own rules" as the "statute does not grant federal courts jurisdiction to enforce union constitutions and bylaws." *Acosta v. Local 101, Transp. Workers Union of Am. AFL-CIO*, 339 F. Supp. 3d 80, 95 (E.D.N.Y. 2018); *see also Guarnaccia v. Kenin*, 234 F. Supp. 429, 437 (S.D.N.Y.) (observing that it "cannot be disputed" that "the mere claimed violation of a union By-Law or other asserted injustice" is insufficient to invoke federal jurisdiction), *aff'd sub nom. Gurton v. Arons*, 339 F.2d 371 (2d Cir. 1964). Rather, a court must "determin[e] whether the conduct, irrespective of its compliance with or contravention of the By-Laws and Constitution, violates the rights guaranteed by [the LMRDA]." *Id.* The Court has determined that Plaintiff's expulsion for failure to pay dues was exempt from any due process requirements imposed by the LMRDA. Accordingly, Plaintiff's due process claim for his expulsion is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York  /s/ LDH
      November 12, 2020  L aSHANN DeARCY HALL
                       United States District Judge